*EXHIBIT 3*

*EXHIBIT 3*

# DEED OF GUARANTEE AND INDEMNITY

## BON WOONG KOO

(as Guarantor)

and

## CHA HONG KOO

(as Guarantor)

## NORMAN INTERTRADE LTD

(as Beneficiary)

dated as of

5/24/2019

_____

## DEED OF GUARANTEE AND INDEMNITY

This **DEED OF GUARANTEE AND INDEMNITY** entered into as a deed ( "**Agreement**"), dated 5/24/2019 _____ 2019, is made by and among (i) Cha-Hong Koo (also known as John Koo), an individual, who resides in, Seoul, Republic of Korea ("**Guarantor 1**"); (ii) Bon-Woong Koo (also known as Brian Koo), an individual, who resides in Los Altos, CA ("**Guarantor 2**" and, together with Guarantor 1, the "**Guarantors**") and (iii) **NORMAN INTERTRADE LTD.,** a company organized under the laws of the British Virgin Islands under registered number 1613261 and having its registered office at Trident Chambers, PO Box 146, Road Town, Tortola, British Virgin Islands (the "**Beneficiary**").

### RECITALS

**WHEREAS,** HONESTBEE PTE. LTD. (Company Registration No. 201217834C), a company incorporated in Singapore with its registered address at 2 Alexandra Road, #04-01B, Delta House, Singapore (the "**Obligor**"), has entered into the Promissory Loan Agreement dated on or about the date of this Agreement with the Beneficiary (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its provisions, the "**Loan Agreement**").

**WHEREAS,** it is a condition precedent to the making of the Loan by the Beneficiary under the Loan Agreement that the Guarantor shall have executed and delivered this Agreement.

**NOW, THEREFORE,** in consideration of the premises and in order to induce the Beneficiary to make the Loan pursuant to the Loan Agreement the Guarantor hereby agrees as follows:

### ARTICLE I

### DEFINITIONS

Except as provided otherwise, capitalized terms used herein without definition shall have the meanings ascribed thereto in the Loan Agreement.  For purposes of this Agreement, the following terms shall have the following meanings:

"**Affiliate**", as applied to any Person, means any other Person directly or indirectly controlling, controlled by, or under common control with, that Person.  For the purposes of this definition, "control" (including, with correlative meanings, the terms "controlling", "controlled by" and "under common control with"), as applied to any Person, means the possession, directly or indirectly, of the power (i) to vote 5% or more of the Securities having ordinary voting power for the election of directors of such Person or (ii) to direct or cause the direction of the management and policies of that Person, whether through the ownership of voting securities or by contract or otherwise.

"**Beneficiary**" has the meaning set forth in the Preamble hereof.

"**Business Day**" means a day other than Saturday and Sunday or public holiday in Singapore, , Ukraine or the USA on which banks generally are open in Singapore, , Kyiv, Ukraine and New York, USA for the transaction of normal banking business, and where used

to specify a period within which any act is to be done or not to be done, a day other than a day which is a Saturday, Sunday or public holiday in any country in which such act is to be done or not to be done;

"**Dollars**" means United States dollars, the lawful currency of the United States of America.

"**Governmental Authority**" means the government of any nation or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal or any other level, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of, or pertaining to, government (including any supra-national bodies such as the European Union or the European Central Bank).

"**Guarantor**" means each of (i) Guarantor 1 and (ii) Guarantor 2 as set forth in the Preamble hereof.

"**Indemnitee**" has the meaning specified in Section 6.03.

"**Obligations**" has the meaning specified in Section 2.01.

"**Obligor Affiliate**" means any Person who is (or hereafter becomes) an Affiliate of the Obligor.

"**Person**" means and includes an individual, corporation, limited liability company, partnership, trust or trustee thereof, estate or executor thereof, unincorporated organization or joint venture, court or governmental unit or any agency or subdivision thereof, or any other legally recognizable entity.

"**Post-Petition Interest**" has the meaning specified in Section 2.01(a).

"**Related Parties**" means, with respect to any Person, such Person's Affiliates and the directors, officers, employees, partners, agents, trustees, administrators, managers, advisors and representatives of it and its Affiliates.

"**Relevant Document**" means each of (i) the Loan Agreement; (ii) this Agreement, and (iii) each security document under which Obligor's obligations under the Loan Agreement are secured.

"**Taxes**" means any and all present or future income, stamp or other taxes, levies, imposts, duties, deductions, charges, fees or withholdings (including backup withholding) imposed, levied, withheld or assessed by any Governmental Authority, together with any interest, additions to tax or penalties imposed thereon and with respect thereto.

ARTICLE II

AGREEMENT TO GUARANTEE OBLIGATIONS

**Section 2.01. Guarantee and Indemnity**. Subject to Section 2.03, the Guarantor hereby absolutely, unconditionally and irrevocably guarantees to the Beneficiary, as primary obligor and not merely as surety,

(a) the due and prompt payment by the Obligor in Dollars of:

(i) the principal of and premium, if any, and interest at the rate specified in the Loan Agreement (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding ("**Post-Petition Interest**")) on the Loan when and as due, whether at scheduled maturity, date set for prepayment, by acceleration or otherwise; and

(ii) all other monetary obligations of the Obligor and each Obligor Affiliate owed or otherwise payable to the Beneficiary under or in respect of the Loan Agreement and each of the other Relevant Documents, when and as due, including fees, costs, expenses (including, without limitation, fees and expenses of counsel incurred by the Beneficiary in enforcing any rights under this Agreement or the Loan Agreement, or any other Relevant Document), reimbursement obligations, contract causes of action and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding);

(b) the due and prompt performance of all other covenants, duties, debts, obligations and liabilities of any kind of the Obligor and each Obligor Affiliate, individually or collectively, under or in respect of the Loan Agreement, the other Relevant Documents or any other document made, delivered or given in connection with any of the foregoing, in each case whether evidenced by a note or other writing, whether allowed in any bankruptcy, insolvency, receivership or other similar proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, Guarantee, indemnification or otherwise, and whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, fixed or otherwise;

all such obligations in subsections (a) through (b), whether now or hereafter existing, being referred to collectively as the "**Obligations**". The Guarantor further agrees that all or part of the Obligations may be increased, extended, substituted, amended, renewed, consolidated, refinanced, replaced, supplemented or otherwise modified without notice to or consent from the Guarantor and such actions shall not affect the liability of the Guarantor hereunder. Without limiting the generality of the foregoing, the Guarantor's liability shall extend to all amounts that constitute part of the Obligations and would be owed by the Obligor or any Obligor Affiliate to the Beneficiary under or in respect of the

Relevant Documents but for the fact that they are unenforceable or not allowable due to the existence of a bankruptcy, reorganization or similar proceeding involving the Obligor or any Obligor Affiliate; and

(c) as an independent and primary obligation, to indemnify the Beneficiary immediately on demand against any losses suffered by the Beneficiary (i) in consequence of the Obligor's failure to perform any of its obligation under the Loan Agreement or under the other Relevant Documents; and (ii) if any obligation guaranteed under the Loan Agreement or under the other Relevant Documents is or becomes unenforceable, invalid or illegal. The amount of the losses shall be equal to the amount, including indirect and contingent losses which the Beneficiary would otherwise have been entitled to recover.

For the avoidance of doubt, Guarantor 1 and Guarantor 2 shall bear joint and several liability under this Section.

**Section 2.02. Undertaking to pay.** If the Obligor fails to perform or discharge or is in default in respect of any of the Obligations, the Guarantor shall, not later than ten (10) Business Days upon receipt of the first written demand from the Beneficiary, perform and discharge such Obligations. The Beneficiary shall not be obliged before taking steps to enforce any of its rights and remedies under this Agreement to make any demand or seek to enforce any right against the Obligor or any other person, to obtain judgment in any court or tribunal in any jurisdiction against the Obligor or any other person or to file any claim in a bankruptcy, liquidation or similar proceedings of the Obligor. The obligations of the Guarantor under this Agreement shall not be conditioned or contingent upon the pursuit by the Beneficiary at any time of any right or remedy against the Obligor or against any other person (including any other guarantor) which may be or become liable in respect of all or any part of the Obligations or against any collateral security or guarantee therefore.

**Section 2.03. Limitation of Liability.** Notwithstanding anything contained herein to the contrary, the aggregate amount of the Obligations of the Guarantor hereunder at any time shall not exceed $40,000,000 (Forty Million Dollars). The Guarantor agrees that the Obligations may at any time and from time to time exceed the amount of the liability of the Guarantor hereunder without impairing this Agreement or affecting the rights and remedies of the Beneficiary hereunder. The parties intend and agree that so long as any part of the unguaranteed portion of the Obligations remains unpaid, no payments on the Obligations shall be considered in whole or in part to be in satisfaction of the obligations of the Guarantor hereunder.

**Section 2.04. Reinstatement.** The Guarantor agrees that its guarantee and indemnity hereunder shall continue to be effective or be reinstated, as the case may be, if at any time all or part of any payment of any Obligation is rescinded or must otherwise be returned by the Beneficiary upon the insolvency, bankruptcy or reorganization (or similar event) of the Obligor or any Obligor Affiliate or otherwise, all as though such payment had not been made.

## ARTICLE III

### GUARANTEE ABSOLUTE AND UNCONDITIONAL; WAIVERS

**Section 3.01. Guarantee Absolute and Unconditional; No Waiver of Obligations.** The Guarantor guarantees that the Obligations will be paid in Dollars strictly in accordance with the terms of the Relevant Documents, regardless of any law, regulation or order of any Governmental Authority now or hereafter in effect. The obligations of the Guarantor hereunder are independent of the Obligations of the Obligor or any Obligor Affiliate or of the obligations of any other party under any Relevant Document. A separate action may be brought against the Guarantor to enforce this Agreement, whether or not any action is brought against the Obligor or any Obligor Affiliate or any other party or whether or not the Obligor or any Obligor Affiliate or any other party is joined in any such action. The liability of the Guarantors hereunder is irrevocable, continuing, absolute and unconditional and the obligations of the Guarantor hereunder, to the fullest extent permitted by applicable law, shall not be discharged or impaired or otherwise affected by, and the Guarantor hereby irrevocably waives any defenses to enforcement it may have (now or in the future) by reason of:

(a) any illegality or lack of validity or enforceability of any Obligation or any Relevant Document or any related agreement or instrument;

(b) any change in the time, place or manner of payment of, or in any other term of, the Obligations or any other obligation of the Obligor or any Obligor Affiliate or any other party under any Relevant Document, or any rescission, waiver, amendment or other modification of any Relevant Document or any other agreement, including any increase in the Obligations resulting from any extension of additional credit or otherwise;

(c) any reduction, limitation, impairment or termination of any of the Obligations for any reason, or any taking, exchange, substitution, release, impairment or non-perfection of any collateral, or any taking, release, impairment, amendment, waiver or other modification of any Guarantee, for any of the Obligations;

(d) any manner of sale, disposition or application of proceeds of any collateral or other assets to all or part of any of the Obligations;

(e) any default, failure or delay, wilful or otherwise, in the performance of any of the Obligations;

(f) the incapacity, lack of authority, death or disability of the Obligor or any Obligor Affiliate or any other party to any Relevant Document or any other Person, or any change, restructuring or termination of the corporate structure, ownership or existence of any of the foregoing Persons or any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Obligor or any Obligor Affiliate or any other party to any Relevant Document or any other Person or its or their respective assets or any resulting release or discharge of any Obligation;

(g)     any failure of the Beneficiary to disclose to the Guarantor, the Obligor or any Obligor Affiliate or any other party to any Relevant Document or any other Person any information relating to the business, condition (financial or otherwise), operations, performance, properties or prospects of the Obligor or any Obligor Affiliate or any other party to any Relevant Document or any other Person now or hereafter known to the Beneficiary; the Guarantor waiving any duty of the Beneficiary to disclose such information;

(h)     the failure of any other Person to execute or deliver this Agreement or any other Guarantee or agreement or the reduction of liability of the Guarantor or the release or reduction of liability of any other guarantor or surety with respect to the Obligations;

(i)     the failure of the Beneficiary to assert any claim or demand or to exercise or enforce any right or remedy under the provisions of any Relevant Document or otherwise;

(j)     any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, the Obligor or any Obligor Affiliate against the Beneficiary; or

(k)     any other circumstance (including, without limitation, any statute of limitations), act, omission or manner of administering the Loan Agreement or any other Relevant Document or any existence of or reliance on any representation by the Beneficiary that might vary the risk of the Guarantor or otherwise operate as a defense available to, or a legal or equitable discharge of, the Obligor or any Obligor Affiliate or any other guarantor or surety.

   Section 3.02.   **Waivers and Acknowledgements**.

(a)     The Guarantor hereby unconditionally and irrevocably waives any right to revoke this Agreement and acknowledges that this Agreement is continuing in nature and applies to all presently existing and future Obligations.

(b)     The Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Agreement and any requirement that the Beneficiary protect, secure, perfect or insure any lien or any property subject thereto.

(c)     This Agreement is a Guarantee of payment and not of collection. The Guarantor agrees that the Beneficiary need not attempt to collect any Obligations from the Obligor or any Obligor Affiliate or any other party to any Relevant Document or any other Person or to realize upon any collateral, but may require the Guarantor to make immediate payment of all of the Obligations to the Beneficiary when due, whether by maturity, acceleration or otherwise, or at any time thereafter.

(d)     The Guarantor hereby unconditionally and irrevocably waives any defense based on any right of set-off or recoupment or counterclaim against or in respect of the Obligations of the Guarantor hereunder.

(e)     The Guarantor acknowledges that the Beneficiary may, at its election and without notice to or demand upon the Guarantor, foreclose on any collateral (including any real property) held by it by one or more judicial or non-judicial sales, accept an assignment of any such collateral in lieu of foreclosure, compromise or adjust any part of the Obligations, make any other accommodation with the Obligor, any Obligor Affiliate, any other party to any Relevant Document or any other guarantor or surety or exercise any other right or remedy available to it against the Obligor, any Obligor Affiliate, any other party to any Relevant Document or any other guarantor or surety, without affecting or impairing in any way the liability of the Guarantor hereunder except to the extent the Obligations (other than contingent or unliquidated obligations or liabilities) have been paid in full or collateralized in full in Dollars. The Guarantor hereby waives any defense arising out of such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of subrogation, reimbursement, exoneration, contribution or indemnification or other right or remedy of the Guarantor against the Obligor, any Obligor Affiliate, any other party to any Relevant Document or any other guarantor or surety, or any collateral.

(f)     No failure on the part of the Beneficiary to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

## ARTICLE IV

## GUARANTOR RIGHTS OF SUBROGATION, ETC.

**Section 4.01. Agreement to Pay; Subrogation, Subordination, Etc.** Without limiting any other right that the Beneficiary has at law or in equity against the Guarantor, if the Obligor or any Obligor Affiliate fails to pay any Obligation to the Beneficiary when and as due, whether at maturity, by acceleration, after notice of prepayment or otherwise, the Guarantor agrees to promptly pay the amount of such unpaid Obligations to the Beneficiary in Dollars. Upon payment by the Guarantor of any sums to the Beneficiary as provided herein, all of the Guarantor's rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against the Obligor and each Obligor Affiliate shall be subordinate and junior in right of payment to the prior indefeasible payment in full in Dollars of all Obligations. In furtherance of the foregoing, prior to the payment in full in Dollars of the Obligations, the Guarantor shall refrain from taking any action or commencing any proceeding against the Obligor or any Obligor Affiliate (or any of their respective successors or assigns, whether in connection with a bankruptcy proceeding or otherwise) to recover any amounts in respect of payments made under this Agreement to the Beneficiary. In addition, any indebtedness of the Obligor and

any indebtedness of any Obligor Affiliate now or hereafter held by the Guarantor is hereby subordinated in right of payment to the prior payment in full in Dollars of the Obligations. If any payment shall be paid to the Guarantor in violation of this Section 4.01 on account of (a) such subrogation, exoneration, contribution, reimbursement, indemnity or similar right or (b) any such indebtedness of the Obligor or Obligor Affiliate, such amount shall be held in trust for the benefit of the Beneficiary, segregated from other funds of the Guarantor, and promptly paid or delivered to the Beneficiary in the same form as so received (with any necessary endorsement or assignment) to be credited against the payment of the Obligations, whether due or to become due, in accordance with the terms of the Relevant Documents or to be held as collateral for any Obligations.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES; COVENANTS

**Section 5.01. Representations and Warranties.** The Guarantor represents and warrants that:

(a) **Competency.** The Guarantor (i) is an adult individual and is sui juris; (ii) has the necessary power and authority (including full legal and dispositive capacity) to enter into, deliver, and perform his obligations under this Agreement; (iii) is not, by reason of illness or incapacity (whether mental or physical), incapable of managing his own affairs; and (iv) is not under any restraint or is in any respect incompetent to enter into this Agreement. The Guarantor has read and understood the terms of the Loan Agreement and the other Relevant Documents in existence as of the date of this Agreement and has sought, or has had sufficient opportunity to seek, separate personal legal advice about the nature and extent of his obligations under this Agreement and is fully aware of its terms and effect.

(b) **Non-contravention.** The execution, delivery and performance by the Guarantor of this Agreement does not contravene or result in a default under (i) any contractual restriction binding on or affecting the Guarantor, (ii) any court decree or order binding on or affecting the Guarantor or (iii) any requirement of applicable law binding on or affecting the Guarantor.

(c) **Approvals**. The Guarantor has obtained any and all consents of any third parties as applicable (including the spousal consent) for entering into this Agreement. No other authorization or approval or other action by, and no notice to or filing with, any Governmental Authority or other Person (other than those that have been duly obtained or made and which are in full force and effect) is required for the consummation of this Agreement or the due execution, delivery or performance by the Guarantor of this Agreement.

(d)     **Validity.** This Agreement has been duly executed and delivered and constitutes the legal, valid and binding obligations of the Guarantor, enforceable against the Guarantor in accordance with its terms (except, in any case, as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization or similar laws from time to time in effect affecting creditors' rights generally and by general principles of equity).

(e)     **Financial Information.** The Guarantor is solvent and the execution of this Agreement does not and will not render the Guarantor insolvent. There are no material liabilities of the Guarantor of any kind whatsoever, whether accrued, contingent, absolute, determined, determinable, or otherwise, and there is no existing condition, situation or set of circumstances which could reasonably be expected to result in such a liability, other than those liabilities provided for or disclosed in the most recently delivered personal financial statement provided by the Guarantor to the Beneficiary.

(f)     **No Material Adverse Change.** There has been no material adverse change in the net worth, assets, financial condition, or prospective financial position of the Guarantor since December 31, 2017. No litigation, investigation, or proceeding of or before any arbitrator or Governmental Authority is pending or, to the knowledge of the Guarantor, threatened by or against the Guarantor or against any of its assets (i) with respect to this Agreement or any of the transactions contemplated hereby, (ii) which could have a material adverse effect on the net worth, assets, financial condition, or prospective financial position of the Guarantor.

(g)     **Accuracy of Information.** None of the factual information heretofore or contemporaneously furnished in writing to the Beneficiary by or on behalf of the Guarantor in connection with this Agreement, the Loan Agreement or any other Relevant Document, including without limitation the personal financial statement of the Guarantor provided to the Beneficiary, contains any untrue statement of a material fact, or omits to state any material fact necessary to make any information not misleading, and no other factual information hereafter furnished in connection with Agreement, the Loan Agreement or any other Relevant Document by or on behalf of the Guarantor to the Beneficiary will contain any untrue statement of a material fact or will omit to state any material fact necessary to make any information not misleading on the date as of which such information is dated or certified.

(h)     **Conditions.** There are no conditions precedent to the effectiveness of this Agreement that have not been satisfied or waived.

(i)     **Information.** The Guarantor has, independently and without reliance upon the Beneficiary and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement and any other Relevant Document to which it is or may become a party, and has established adequate procedures for continually obtaining information pertaining to, and is now and at all times will be completely familiar with, the business, condition (financial or otherwise), operations, performance, properties and prospects of the Obligor and each Obligor Affiliate.

(j)     **Investigation.** The Guarantor acknowledges and agrees that the Beneficiary shall have no obligation to investigate the financial condition or affairs of the Obligor or any Obligor Affiliate for the benefit of the Guarantor nor to advise the Guarantor of any fact respecting, or any change in, the financial condition or affairs of the Obligor or Obligor Affiliate that might become known to the Beneficiary at any time, whether or not the Beneficiary knows or believes or has reason to know or believe that any such fact or change is unknown to the Guarantor, or might (or does) materially increase the risk of the Guarantor as guarantor, or might (or would) affect the willingness of the Guarantor to continue as a guarantor of the Obligations.

Section 5.02.  **Covenants.** The Guarantor covenants and agrees that, until the Obligations are paid in Dollars in full:

(a)     **Financial Information.** The Guarantor will furnish or cause to be furnished to the Beneficiary a personal financial statement and such other financial and other information related to the Guarantor as the Beneficiary may from time to time request.

(b)     **Net Worth.** The Guarantor will not permit his tangible net worth, as determined by generally accepted accounting principles, to be less than [●] Dollars (or its equivalent in foreign currency).

(c)     **Dispositions.** The Guarantor will not sell, mortgage, pledge or otherwise transfer any material portion of his real or personal property for less than fair market value and reasonably equivalent consideration.

ARTICLE VI

MISCELLANEOUS

Section 6.01.   **Taxes.** Any and all payments by the Guarantor under or in respect of this Agreement shall be made free and clear of and without deduction or withholding for any Taxes except as required by applicable law. If the Guarantor is required by applicable law (as determined in the good faith discretion of the Guarantor) to deduct or withhold any Taxes from such payments, then (i) the amount payable by such Guarantor shall be increased so that after all such required deductions or withholdings are made (including deductions or withholdings applicable to additional amounts payable under this Section), the recipient receives an amount equal to the amount it would have received had no such deduction or withholding been made, and (ii) such Guarantor shall make such deductions or withholdings and timely pay the full amount deducted or withheld to the relevant Governmental Authority in accordance with applicable law.

Section 6.02.   **Amendments and Waiver.** No term or provision of this Agreement may be waived, amended, supplemented or otherwise modified or varied except in a writing signed by the Guarantor and the Beneficiary.  No delay or omission on the part of the Beneficiary in exercising any right shall operate as a waiver of such right or any

other right. A waiver by the Beneficiary of any provision of this Agreement shall not prejudice or constitute a waiver of the Beneficiary's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by the Beneficiary, or course of dealing between the Beneficiary and the Guarantor, shall constitute a waiver of any of the rights of the Beneficiary or of any of the Guarantor's obligations in respect of subsequent events, transactions or circumstances. Whenever the consent of the Beneficiary is required under this Agreement, the granting of such consent by the Beneficiary in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of the Beneficiary.

Section 6.03. **Indemnification**.

(a)     The Guarantor hereby agrees to indemnify and hold harmless the Beneficiary and each Related Party of the Beneficiary (each such Person being called an "**Indemnitee**") from any losses, damages, liabilities, claims and related expenses (including the fees and expenses of any counsel for any Indemnitee), and shall indemnify and hold harmless each Indemnitee from all fees, expenses and time charges for attorneys who are employees of any Indemnitee, incurred by any Indemnitee or asserted against any Indemnitee by any Person (including the Guarantor, the Obligor and any Obligor Affiliate) other than such Indemnitee and its Related Parties arising out of, in connection with or resulting from this Agreement (including, without limitation, enforcement of this Agreement) or any failure of any Obligations to be the legal, valid, and binding obligations of the Obligor or the relevant Obligor Affiliate, enforceable against the Obligor or the relevant Obligor Affiliate in accordance with their terms, whether brought by a third party or by the Guarantor, the Obligor or an Obligor Affiliate, and regardless of whether any Indemnitee is a party thereto; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses (i) are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or wilful misconduct of such Indemnitee or (ii) result from a claim brought by the Guarantor, the Obligor or the relevant Obligor Affiliate against an Indemnitee for breach in bad faith of such Indemnitee's obligations under any Relevant Document, if the Guarantor, the Obligor or the relevant Obligor Affiliate has obtained a final and nonappealable judgment in its favor on such claim as determined by a court of competent jurisdiction. This Section 6.03(a) shall not apply with respect to Taxes other than any Taxes that represent losses, claims, damages, or similar items arising from any non-Tax claim.

(b)     To the fullest extent permitted by applicable law, the Guarantor hereby agrees not to assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, the Loan Agreement or any other Relevant Document or any agreement or instrument contemplated hereby, or the transactions contemplated hereby or thereby. No Indemnitee shall be liable for any damages arising from the use of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Relevant Documents or the transactions contemplated hereby or thereby by unintended recipients.

(c)    All amounts due under this Section shall be payable promptly after demand therefor.

(d)    Without prejudice to the survival of any other agreement of the Guarantor under this Agreement or any other Relevant Documents, the agreements and obligations of the Guarantor contained in Section 2.01 (with respect to enforcement expenses), Section 1.01, Section 6.01 and this Section 6.03 shall survive termination of the Relevant Documents and payment in full of the Obligations and all other amounts payable under this Agreement.

**Section 6.04.  Notices**.

(a)    **Notices Generally.** Any notice (including any demand or any other communication) given under this Agreement or in connection with this Agreement shall be in writing and in English, signed by or on behalf of the party giving it, and mailed by certified or registered mail, delivered by hand or overnight courier service as follows:

(i)    If to Guarantor 1:

| | |
|---|---|
| Address: | 435 Tasso Street, Palo Alto, CA 94301 |
| Tel./Fax: | +8210-2356-3404 |
| For the attention of: | Chahong Koo |
| E-mail: | chahongk.46@gmail.com |

(ii)    If to Guarantor 2:

| | |
|---|---|
| Address: | 243 Angela Drive, Los Altos, CA 94022 |
| Tel./Fax: | 6502692453 |
| For the attention of: | Bonwoong Koo |

|  |  |  |
|---|---|---|
|  | E-mail: | [Brian@formation8.com] |

    (iii)    If to the Beneficiary:

|  |  |  |
|---|---|---|
|  | Address: | 59 Zhylyanska street, office 111, Kyiv, Ukraine, 01033 |
|  | Tel./Fax: | +380444958434 |
|  | For the attention of: | valerii.kondratenko@eastforce.com.ua |
|  | E-mail: | Valerii Kondratenko |

A notice sent by any of the methods mentioned in this Section shall be simultaneously dispatched to the parties by e-mail, provided that such notice shall be deemed delivered and take effect:

    (i)    if delivered by hand, at the time of delivery at that address signed for by the recipient and dated at such address;

    (ii)    if sent by recorded delivery, at the time recorded by the delivery service as the delivery time; and

    (iii)    if sent by pre-paid airmail providing proof of postage, at 9:00 am on the third calendar day or, if posted overseas, the fifth calendar day after posting.

A notice given under this Agreement or in connection with this Agreement shall not be valid, if sent by e-mail only.

(b)    **Change of Address, Etc.**  Any party hereto may change its address or facsimile number for notices and other communications hereunder by notice to the other parties hereto. The Guarantor agrees to keep the Beneficiary informed at all times of the Guarantor's current address.

    **Section 6.05. Continuing Guarantee; Assignments.** This Agreement is a continuing Guarantee and shall:

(a)    remain in full force and effect until the payment in full in Dollars of the Obligations and all other amounts payable under this Agreement;

(b)    be binding on the Guarantor, his heirs, successors, assigns and transferees; and

(c)    inure to the benefit of and be enforceable by the Beneficiary and its successors, assigns and transferees.

    The Beneficiary may assign or otherwise transfer all or any portion of its rights and obligations under the Loan Agreement and any other Relevant Document (including in the case

of the Loan Agreement all or any portion of the Loan) to any other Person, and such other Person shall thereupon become vested with all the benefits in respect thereof granted to the Beneficiary herein or otherwise. The Guarantor shall not have the right to assign or transfer its rights hereunder or any interest herein without the prior written consent of the Beneficiary.

**Section 6.06.   Additional security.** This Agreement is in addition to and not in substitution for any present and future guarantee or other security held by the Beneficiary.

**Section 6.07.   Severability of Provisions.** Any provision hereof which is invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without invalidating the remaining provisions hereof or affecting the validity, legality or enforceability of such provision in any other jurisdiction.

**Section 6.08.   Counterparts; Integration; Effectiveness; Electronic Execution; Captions.** This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. This Agreement, the Loan Agreement, and the other Relevant Documents, constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. This Agreement shall become effective in all respects as among all of the parties (including in favor and for the benefit of the Beneficiary and Indemnitee) when the Beneficiary shall have received a counterpart hereof that bears the signature of the Guarantor, without the necessity of any acceptance by the Beneficiary, or any notice to the Guarantor, and will continue in full force and effect as provided herein. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.  The Beneficiary may retain and store an executed copy of this Agreement in electronic form, and such electronic form shall be deemed to be an original (with no requirement to receive or retain a paper original).   The captions contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

**Section 6.09.   Governing Law; Jurisdiction; Etc**.

(a)   **Governing Law.** This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with the laws of England and Wales.

(b)   **Submission to Jurisdiction.** Any dispute or claim arising out of or in connection with this Agreement or its subject matter, including any question regarding its existence, negotiation, validity, termination or enforceability (including non-contractual disputes or claims) shall be referred to and finally resolved by arbitration under the LCIA Rules, which Rules are deemed to be incorporated by reference into this clause. There shall be one arbitrator and the appointing authority shall be the LCIA. The seat, or legal place, of arbitration shall be London, United Kingdom. The language to be used in the arbitral proceedings shall be English.

      (c)    **Waiver of Immunity.** The Guarantor irrevocably and unconditionally (i) agrees not to claim any immunity from proceedings brought by any other party against it in relation to this Agreement and to ensure that no such claim is made on its behalf; (ii) consents generally to the giving of any relief or the issue of any process in connection with those proceedings; and (iii) waives all rights of immunity in respect of it or its assets.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above.

[*remainder of this page intentionally left blank*]

**SIGNATURE PAGE TO THE DEED OF GUARANTEE AND INDEMNITY**

EXECUTED and DELIVERED as a deed )

by **BON WOONG KOO** )

DocuSigned by: [signature] 10AD4476F71D465... ...............................

Witnessed by Sam Asher )

)

DocuSigned by: [signature] F0F90B04B38542B... ...............................

Residing at 1008 Jewell Street, Austin, TX 78704 )

)

)

Occupation: Advisor for Brian Koo )

)

*[remainder of this page intentionally left blank]*

**SIGNATURE PAGE TO THE DEED OF GUARANTEE AND INDEMNITY**

EXECUTED and DELIVERED as a deed ) *[signature: Cha Hong Koo]*
by **CHA HONG KOO** ) 10AD4476F71D465...

Witnessed by Sam Asher ) *[signature]*
) F0F90B04B38542B...
Residing at 1008 Jewell Street, Austin, TX 78704 )

)

)

Occupation: Advisor for Brian Koo )

)

[*remainder of this page intentionally left blank*]

**SIGNATURE PAGE TO THE DEED OF GUARANTEE AND INDEMNITY**

EXECUTED and DELIVERED as a deed )

by NORMAN INTERTRADE LTD )

acting by: Valerii Kondratenko )

_____ )

based on Director, acting based on Charter )
_____ )

_____ )

*Signed: Valerii Kondratenko (DocuSigned, A6B3773508B24E9...)*

Witnessed by )

Larysa Yamshchykova
_____ )

Residing at 8/20 Shovkunenka str., apt. 98, Kyiv, Ukraine
_____ )

_____ )

_____ )

Occupation: in-house lawyer _____ )

_____ )

*Witness signed: Larysa Yamshchykova (DocuSigned, 2EE61ACB48E1477...)*

[*remainder of this page intentionally left blank*]